| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
| CARLOS VEGA COLÓN<br><br>Parte Apelante<br><br>v.<br><br>MAPFRE-PRAICO<br>INSURANCE COMPANY<br><br>Parte Apelada | KLAN202300304 | *Apelación*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala de<br>Bayamón<br><br>Civil núm.:<br>BY2022CV01792<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

Comparece Carlos Vega Colón (Apelante o señor Vega Colón), mediante recurso de *Apelación* en el que nos solicita que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de marzo de 2023[1]. En el referido dictamen, el foro primario declaró Ha Lugar la *Solicitud de Sentencia Sumaria* que presentó Mapfre-Praico Insurance Company (Apelada o Mapfre-Praico) y desestimó la *Demanda* por daños y perjuicios presentada por el señor Vega Colón.

Evaluados los autos del caso a la luz del derecho aplicable, confirmamos la *Sentencia* dictada por el tribunal apelado.

**I.**

Durante la mañana del 19 de mayo de 2020, el señor Vega Colón sufrió un accidente de auto mientras conducía su bicicleta por la Carretera PR-5, intersección con la Carretera PR-165, en el Municipio de Cataño. De los autos surge que, cerca de las 9:45 de la mañana de ese día, el señor Vega Colón fue impactado en la

---

[1] La *Sentencia* fue notificada y archivada en autos el 16 de marzo de 2023.

referida intersección por la parte izquierda de su bicicleta, por el vehículo de motor marca Toyota, modelo RAV-4, que conducía el Sr. Edward Ortiz López[2]. Como consecuencia del choque, el señor Vega Colón alegó que sufrió trauma en la cabeza, en el cuello, múltiples abrasiones y fractura en la tibia, por lo que tuvo que ser recluido en el Centro Médico de Río Piedras[3].

A raíz de este evento, el 10 de diciembre de 2020, la parte apelante decidió instar un reclamo extrajudicial contra Mapfre-Praico, empresa que aseguraba el auto del señor Ortiz López al momento del accidente. El 20 de noviembre de 2021, el señor Vega Colón volvió a cursar una carta de reclamación contra la aseguradora sin resultado alguno[4].

Finalmente, el 7 de abril de 2022, el señor Vega Colón presentó una *Demanda* contra Mapfre-Praico por daños y perjuicios, en la que alegó que la negligencia del señor Ortiz López, al manejar su auto de manera temeraria, distraída y sin tomar las debidas precauciones le causó lesiones en distintas partes de su cuerpo que provocaron que fuera transportado en ambulancia al Centro Médico de Río Piedras, en donde fue intervenido quirúrgicamente para atender una fractura de la tibia[5].

Además, el señor Vega Colón argumentó que, por causa de los perjuicios provocados por el accidente, ha padecido y continúa padeciendo intensos sufrimientos físicos que estimó en una suma no menor de $100,000.00[6]. También, reclamó la cantidad de $25,000.00, por las angustias mentales que ha sufrido[7].

Posteriormente, Mapfre-Praico contestó el reclamo incoado por el señor Vega Colón y negó la mayoría de las alegaciones en su

---

[2] Véanse las páginas 24 a la 31 en el Apéndice del Recurso de Apelación.
[3] Véase el Anejo I en el Apéndice del Recurso de Apelación.
[4] *Íd.*
[5] *Íd.*
[6] *Íd.*
[7] *Íd.*

contra. Levantó como defensas afirmativas que la acción estaba prescrita, que la Demanda no exponía una reclamación válida que justificara la concesión de un remedio y que los hechos alegados son consecuencia de la negligencia y culpa del señor Vega Colón, entre otras defensas[8].

Después de varios trámites procesales, Mapfre-Praico presentó una *Solicitud de Sentencia Sumaria* por ausencia de prueba[9]. Expuso que el accidente ocurrió por la negligencia exclusiva del señor Vega Colón, según quedara constatado en el *Informe de Choque de Tránsito* de la Policía. A su vez, sostuvo que este informe nunca fue impugnado por el señor Vega Colón.

El 19 de diciembre de 2022, el señor Vega Colón presentó su oposición a la moción de sentencia sumaria[10]. En ella expuso que existía controversia real sobre si hubo o no negligencia por parte del conductor, el señor Ortiz López. Sostuvo que el conflicto de versiones de las partes involucradas sobre cómo ocurrió el accidente impide que se disponga del pleito de forma sumaria.

Después de evaluar la *Solicitud de Sentencia Sumaria* presentada por Mapfre-Praico y su oposición, el tribunal apelado determinó como hechos probados los siguientes:

1. El 19 de mayo de 2020, ocurrió un accidente en la PR-5, intersección con la PR-165, en el Municipio de Cataño, Puerto Rico.

2. Al momento de los hechos, el Sr. Carlos Vega Colón manejaba una bicicleta.

3. Al momento de los hechos, el Sr. Edward Alexis Ortiz López manejaba el vehículo de motor, marca Toyota, modelo RAV-4, tablilla IZO-762.

4. El accidente fue investigado por la Policía de Puerto Rico, agente Favián A. Rodríguez Méndez, placa 37253.

5. El agente Favián A. Rodríguez Méndez, placa 37253 redactó el Informe de Choque de Tránsito, número 2020:7-017:001749.

---

[8] Véase el Anejo II en el Apéndice del Recurso de Apelación.
[9] Véase el Anejo III en el Apéndice del Recurso de Apelación.
[10] Véase el Anejo IV en el Apéndice del Recurso de Apelación.

6. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, el Sr. Carlos Vega Colón manejaba el vehículo identificado como #1.

7. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, el Sr. Edward Alexis Ortiz López manejaba el vehículo identificado como #2.

8. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, la visión del área no estaba obstruida.

9. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, el clima era claro.

10. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, el pavimento estaba seco.

11. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, el Sr. Carlos Vega Colón se apreciaba bajo los efectos de alcohol, drogas y como conductor inexperto.

12. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, el Sr. Carlos Vega Colón manejaba por la acera.

13. Según surge del Informe de Choque de Tránsito, número 2020:7-017:001749, el Sr. Carlos Vega Colón manejaba contra el tránsito y en violación a la Ley de Vehículos y Tránsito.

14. Surge del Informe de Choque de Tránsito, número 2020:7-017:001749 lo siguiente:

    FECHA: 19 DE MAYO DE 2020 HORA: 9:55AM DE LA INVESTIGACIÓN REALIZADA Y LUEGO DE ENTREVISTAR A LOS CONDUCTORES SE ESTABLECE QUE MIENTRAS EL CONDUCTOR DEL VEHÍCULO DE MOTOR NÚMERO 1 TRANSITABA EN DIRECCIÓN DE SUR A NORTE POR LA ACERA DE LA CARRETERA NÚMERO 5 JURISDICCIÓN DE CATAÑO Y AL LLEGAR A LA INTERSECCIÓN 165 FRENTE AL ESTADIO MUNICIPAL ESPERUCHO CEPEDA. EL CONDUCTOR DEL MISMO CRUZA LA CARRETERA PARA EL OTRO LADO DE LA ACERA INDEBIDAMENTE POR TAL DESCUIDO Y NEGLIGENCIA EL CONDUCTOR DEL VEHÍCULO DE MOTOR NÚMERO 2 EL CUAL TRANSITABA EN LA INTERSECCIÓN 165 EN DIRECCIÓN DE OESTE A ESTE, IMPACTA CON SU PARACHOQUE FRONTAL AL VEHÍCULO NÚMERO UNO POR EL LADO IZQUIERDO. SE CONTINÚA CON LA INVESTIGACIÓN.

15. Al momento del accidente, el Sr. Carlos Vega Colón estaba manejando la bicicleta sin casco protector, rodilleras o coderas, sí usaba guantes.

16. El señor Vega no impugnó el informe policial ni presentó queja contra el policía que investigó el accidente[11].

---

[11] Véase el Anejo V en el Apéndice del Recurso de Apelación.

A base de estos hechos incontrovertidos y luego de aplicar el derecho correspondiente, el foro de instancia concluyó que el señor Vega Colón provocó el accidente, al no tomar las precauciones antes de cruzar la intersección y chocar su bicicleta con el auto del señor Ortiz López. Finalmente, decretó Ha Lugar la *Solicitud de Sentencia Sumaria* que presentó Mapfre-Praico y desestimó la *Demanda* incoada por falta de prueba contra la parte apelada[12].

Inconforme, el señor Vega Colón acudió ante nosotros mediante recurso de *Apelación* en el que señaló los siguientes seis errores:

PRIMER ERROR:

ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN DEL APELANTE POR LA VÍA SUMARIA CUANDO LA PRUEBA DEMUESTRA QUE ESTAMOS ANTE UN ASUNTO EN DONDE LA CREDIBILIDAD Y LA CONFIABILIDAD DE LA PRUEBA SOLO PUEDEN SER EVALUADAS MEDIANTE UNA VISTA EN SU FONDO.

SEGUNDO ERROR:

ERRÓ EL TPI AL CONCLUIR QUE NO EXISTEN HECHOS ESENCIALES EN CONTROVERSIA A LA CAUSA DE ACCIÓN RADICADA, RAZÓN POR LA CUAL PROCEDIÓ A DICTAR SENTENCIA SUMARIA EN EL PRESENTE CASO.

TERCER ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCARTAR Y NO CONSIDERAR LOS TESTIMONIOS DE LOS INVOLUCRADOS EN EL ACCIDENTE, A TODAS LUCES CONTRADICTORIOS, Y CONCLUIR QUE NO EXISTE UNA CAUSA DE ACCIÓN EN DAÑOS Y PERJUICIOS.

CUARTO ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DARLE ENTERA CREDIBILIDAD A UN INFORME DE CHOQUE DE TRÁNSITO PRELIMINAR, PREPARADO POR EL POLICÍA QUE LLEGÓ AL LUGAR LUEGO DE OCURRIDO EL ACCIDENTE, EL CUAL CONTIENE ERRORES E INCONSISTENCIAS Y QUE NO ES FINAL, TAL Y COMO EN EL MISMO SE INDICA.

QUINTO ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONERLE UN "ESTÁNDAR" MAYOR DE PRUEBA A LA PARTE APELANTE PARA PROBAR SU CASO, CONTRARIO A LAS REGLAS DE EVIDENCIA.

SEXTO ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL LLEGAR A CONCLUSIONES DE HECHOS QUE ESTÁN CONTROVERTIDOS POR PRUEBA ADMISIBLE SOMETIDA ANTE SU CONSIDERACIÓN.

---

[12] *Íd.*

Con el beneficio de la comparecencia de la parte apelada, resolvemos.

**II.**

**A.**

El caso que nos ocupa[13] se rige por las disposiciones del Código Civil de 1930, ya derogado. Conforme a éste, las obligaciones nacen de la ley, los contratos, los cuasicontratos y los actos u omisiones ilícitos en los que intervenga cualquier género de culpa o negligencia. Código Civil 1930, Art. 1042, 31 LPRA sec. 2992.

La responsabilidad civil extracontractual está recogida en el Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141. Dispone dicho artículo que, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado"[14]. A esos efectos, para que prospere una causa de acción en virtud del Art. 1802 del Código Civil de 1930, *supra*, es necesario que concurran tres elementos, a saber: (1) un acto u omisión culposo o negligente; (2) una relación causal entre el acto u omisión culposo o negligente y el daño que se reclama y (3) la existencia de un daño que sea real y no hipotético[15]. "Recae sobre la parte que solicita ser indemnizada el deber de establecer, mediante preponderancia de la prueba, todos los elementos de la causa de acción por daños y perjuicios"[16].

La responsabilidad por negligencia se caracteriza por la concurrencia de los siguientes elementos: (a) la existencia de una obligación o, al menos, de un deber general, reconocido por el Derecho, que exige que los sujetos ajusten sus actos a un determinado tipo de conducta para la protección de los demás

---

[13] Los hechos ocurrieron el 19 de mayo de 2020, previo a la vigencia del Código Civil 2020.

[14] El Art. 1802 del Código Civil de 1930 es equivalente al Art. 1536 del Código Civil de 2020; El Art. 9 del Código Civil de 2020 establece que dicho Código no tiene efecto retroactivo.

[15] *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

[16] *SLG Colón-Rivas v. ELA*, 196 DPR 855, 864 (2016).

contra riesgos irrazonables y (b) que el agente del daño haya obrado sin ajustarse a semejante tipo de conducta. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. II, Vol. III, pág. 88.

Según nuestro Tribunal Supremo, la palabra daño significa "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra"[17]. De otro lado, la culpa o negligencia consiste en no prever o anticipar las consecuencias racionales de un acto u omisión de un acto, que una persona prudente habría de prever en circunstancias similares[18]. En este sentido, la figura de previsibilidad es uno de los elementos esenciales de la responsabilidad por culpa o negligencia[19]. Ahora bien, el referido deber de anticipar y evitar la ocurrencia de un daño, cuya probabilidad es razonablemente previsible, no se extiende a todo riesgo posible[20]. En específico, lo importante es que se pueda prever en forma general, las consecuencias de determinada acción o inacción[21].

Cónsono con ello, el principio de previsibilidad está atado al concepto de causalidad[22]. A tenor con ello, el referido concepto establece que en nuestro ordenamiento jurídico rige la doctrina de causalidad adecuada, mediante la cual se establece que, "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general"[23]. Dicho lo anterior, el propósito de utilizar la doctrina de causalidad adecuada "es limitar la cadena de responsabilidad y evitar que se extienda a límites absurdos.[24]"

---

[17] *López v. Porrata Doria*, 169 DPR 135, 151 (2006).
[18] *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997).
[19] *SLG Colón-Rivas v. ELA*, supra.
[20] *Montalvo v. Cruz*, 144 DPR 748, 756 (1998).
[21] *Montalvo v. Cruz*, supra.
[22] *Rivera v. S.L.G. Diaz*, 165 DPR 408, 422 (2005).
[23] *Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974).
[24] *Miranda v. ELA*, 137 DPR 700, 707 (1994).

**B.**

El uso de las bicicletas por las vías públicas de Puerto Rico se encuentra regulado en el Capítulo XI de la Ley 22-2000, según enmendada, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, 9 LPRA sec. 5321 *et seq.*

Como regla general, la legislación establece que las disposiciones sobre el tránsito de vehículos de motor serán aplicables también a los conductores de bicicletas, excepto aquellas normas que, por su propia naturaleza, no se ajusten a éstos. Artículo 11.01 de la Ley 22-2000, *supra.* De modo que, los ciclistas deberán conducir sus bicicletas "con el debido cuidado y precaución por las vías públicas" al igual que cualquier conductor de un vehículo de motor. *Íd.*

El Artículo 1.17 de la Ley 22-2000, 9 LPRA sec. 5001, define la bicicleta como aquel "vehículo impulsado por fuerza muscular consistente de una (1) o más ruedas, construido para llevar una (1) o más personas sobre su estructura".

Por otro lado, el Art. 11.03 de la Ley 22-2000, 9 LPRA sec. 5322, establece cuáles son las actuaciones ilegales en el manejo y uso de las bicicletas en las vías públicas. La norma dispone, además, que cualquier persona que infrinja las mismas se entenderá que habrá cometido una falta administrativa. Asimismo, establece que si al violentar alguna de las disposiciones establecidas en el mencionado artículo se causa un accidente vehicular, la multa administrativa será de quinientos dólares ($500.00).

En su parte pertinente, el referido artículo establece las siguientes actuaciones como ilegales:

> (c) Correr alejado del borde del encintado u orilla derecha de la vía pública, siendo obligación de toda persona que conduzca una bicicleta por una zona de rodaje mantenerse lo más cerca de la orilla derecha de la vía pública que le sea posible, y ejercer la debida precaución al pasarle a un vehículo que se hallare detenido o a uno que transite en su misma dirección, excepto en caminos o sectores de la zona

de rodaje que hubieren sido reservados para el uso exclusivo de bicicletas.

[...]

(g) Correr por las aceras o por estructuras elevadas destinadas exclusivamente para el paso de peatones.

[...]

(k) Conducir una bicicleta por vías públicas o centros recreativos sin estar provisto de un casco protector que cumpla con los requisitos establecidos mediante reglamento por el Secretario, a tono con las normas de la *American Standards Association* para cascos protectores, [...].

La Ley 22-2000 también establece una *Carta de Derechos del Ciclista y Obligaciones del Conductor* que deberán observar el ciclista, así como el conductor. Artículo 11.04, 9 LPRA sec. 5322a. En particular dispone que:

(1) Todo ciclista tiene el derecho a correr bicicleta en cualquier vía pública, sea ésta una calle, un camino o una carretera estatal o municipal, excepto que no correrá bicicleta en una carretera con acceso controlado, autopista o donde lo prohíba el Secretario de Transportación y Obras Públicas por causas de seguridad.

[...]

(2) El ciclista tiene el derecho a utilizar la orilla derecha de la zona de rodaje de la vía pública y será obligación de todo conductor de un vehículo o vehículo de motor ejercer la debida precaución al pasarle. No obstante, todo ciclista tendrá la opción de utilizar el paseo derecho en aquellas vías públicas en que el mismo se encuentre en condiciones transitables.

[...]

(6) Todo ciclista tiene el derecho a conducir la bicicleta por la acera derecha o por la porción de la vía pública destinada a peatones en cualquiera de las siguientes circunstancias:
   (a) Para detenerse, parar o estacionarse.
   (b) Para acelerar antes de entrar a una vía pública transitada.
   (c) Para evadir un vehículo de motor detenido en el lado derecho o que fuese a hacer un viraje a la derecha.
   (d) Para permitir que otro vehículo que transita más rápido le pase.
   (e) Cuando se lo permita un funcionario del orden público.
   (f) Para evitar un accidente.

(7) Todo ciclista tiene el derecho a conducir la bicicleta por la acera izquierda o por la porción de la vía pública destinada a peatones en cualquiera de las siguientes circunstancias:
   (a) Para desacelerar o detenerse si se han detenido los vehículos y el tráfico u otra circunstancia prohíbe o no permite el tránsito seguro por el lado derecho de la vía de rodaje.
   (b) Cuando se lo autorice un funcionario del orden público.
   (c) Para evitar un accidente.

Por otro lado, como parte de las obligaciones, ningún ciclista podrá pasar luces rojas o guiar bajo los efectos de alcohol, drogas o

sustancias controladas. Asimismo, deberá conducir la bicicleta a favor del tránsito en el carril derecho de la vía pública, entre otras obligaciones. *Íd.*

En tanto, el conductor de un vehículo de motor también tiene que cumplir determinadas obligaciones respecto a los ciclistas. Éstos tienen la obligación de ceder el paso, "reduciendo la velocidad o parando si fuere necesario, a todo ciclista que estuviere cruzando la zona de rodaje en un punto donde no haya semáforos instalados o éstos no estuvieren funcionando". También, deberá tomar todas las precauciones para no arrollar o causar accidentes a los ciclistas. *Íd.*

## C.

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite al tribunal disponer de un caso sin celebrar vista en su fondo[25].

A tales efectos, la Regla 36.3(e) de Procedimiento Civil provee que, para que proceda dictar sentencia sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surja que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente[26].

El Tribunal Supremo de Puerto Rico ha reiterado que un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable[27]. De

---

[25] *Abrams Rivera v. E.L.A.*, 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, supra, pág. 847; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[26] 32 LPRA Ap. V, R. 36.3(e); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra, pág. 214; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006).

[27] *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129-130 (2012); *Ramos Pérez v. Univisión*, supra, pág. 213.

modo que, ante la clara ausencia de certeza sobre todos los hechos materiales en controversia, no procede dictar sentencia sumaria[28].

Por su parte, le corresponde a la parte promovida rebatir dicha moción por vía de declaraciones juradas u otra documentación que apoye su posición, pues si bien el no hacerlo no significa necesariamente que ha de emitirse el dictamen sumario automáticamente en su contra, tal omisión lo pone en riesgo de que ello ocurra[29].

De acuerdo con la Regla 36.3(c) de Procedimiento Civil, cuando se presenta una moción de sentencia sumaria, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que se encuentra obligada a contestar de forma tan detallada y específica como lo haya hecho la parte promovente, ya que, si no lo hace de esta forma, se dictará la sentencia sumaria en su contra, si así procede[30].

Ahora bien, existe la modalidad de la moción de sentencia sumaria por insuficiencia de la prueba, que fue reconocida por el Tribunal Supremo de Puerto Rico en *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716 (1994); antes, por el Tribunal Supremo federal en *Celotex Corp. v. Catrett*, 477 US 317 (1986). Véase, además, *Pérez v. El Vocero* de P.R., 149 DPR 427 (1999). En lo pertinente, el Tribunal Supremo ha expresado que esta procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso[31]. Específicamente, el promovente debe establecer que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún

---

[28] *Mejías et al. v. Carrasquillo et al.*, supra; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).
[29] *Ramos Pérez v. Univisión*, supra, pág. 215; *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383-384 (2009).
[30] 32 LPRA Ap. V, R. 36.3(c).
[31] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 786 (2016).

hecho esencial a su reclamación; y, (3) como cuestión de derecho, procede la desestimación de la reclamación[32].

No obstante, para disponer de un pleito por dicho fundamento es indispensable que se le haya brindado a la parte promovida amplia oportunidad para realizar un descubrimiento de prueba y que se demuestre que la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción[33]. Por su lado, la parte promovida no puede evitar tal solicitud "por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su 'día en corte'"[34].

Valga apuntar que, a la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todos los principios que deben utilizarse por los tribunales al resolver una solicitud de sentencia sumaria[35]. Por ello, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso[36] y, además, si en derecho procede el reclamo[37].

Por ende, la parte que solicita la sentencia sumaria en un pleito está obligada a demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente "que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley"[38].

---

[32] *Id.*

[33] *Id.*, pág. 787.

[34] *Id.*

[35] *Medina v. M.S. & D. Química P.R., Inc.*, supra, pág. 734.

[36] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Id.*, págs. 213-214.

[37] *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

[38] *Rivera, et al. v. Superior Pkg., Inc.*, et al., 132 DPR 115, 133 (1992).

En cambio, "cuando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida"[39].

Así pues, el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria[40].

Por ello, una sentencia sumaria, por constituir una decisión en los méritos es el precedente de cosa juzgada[41] cuando se opone entre partes debidamente relacionadas[42].

Al examinar una sentencia sumaria, los foros apelativos deben utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta[43].

Ahora bien, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales

---

[39] *Medina v. M.S. & D. Química P.R., Inc.,* supra. Se ha advertido que, antes de resolver una controversia por la vía sumaria, el juzgador habrá de discernir cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley". *González v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).

[40] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Véase, además, *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

[41] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, S.E.,* 158 DPR 743, 769 (2003).

[42] *Vera v. Dr. Bravo*, supra, pág. 335; *Sucn. Meléndez v. DACO*, 112 DPR 86, 89 (1982).

[43] *Const. José Carro v. Mun. Dorado*, supra, pág. 129.

efectos, en *Meléndez González, et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil. *Id.*, pág. 118. Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos". *Id.*, pág. 119. Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí. *Id.*

Claro está, lo anterior en nada altera la reiterada normativa en cuanto a que, cuando se utiliza la sentencia sumaria, "el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley"[44].

### III.

Como cuestión de umbral, adelantamos que discutiremos en conjunto los errores señalados por el señor Vega Colón por estar estrechamente relacionados.

En su recurso, el señor Vega Colón asegura que existe controversia sobre los testimonios contradictorios que brindaron las partes en las deposiciones que se le tomaron como parte del descubrimiento de prueba, con relación a cómo ocurrió el accidente. Por ello, aduce que era necesario que el pleito se dilucidara en un juicio en su fondo. El señor Vega Colón entiende que el TPI erró al basar totalmente su dictamen en el *Informe de Choque de Tránsito*

---

[44] *Mejías et al. v. Carrasquillo et al.*, supra; *MGMT. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 611 (2000).

de la Policía de Puerto Rico, a pesar de que éste estaba plagado de errores e inconsistencias y de conclusiones incorrectas e infundadas sobre el Apelante. Sostiene que del propio informe surge que éste no era final, por lo que no se podía presumir su corrección.

Asimismo, asegura que de la prueba testimonial se puede colegir que el señor Ortiz López provocó el accidente que le causó los daños que reclama, al conducir su vehículo de motor de forma descuidada y negligente. Reitera que en este caso existen elementos subjetivos de credibilidad y negligencia que ameritan ser dilucidados en un juicio en su fondo y que no debieron ser adjudicados de manera sumaria.

Por su parte, Mapfre-Praico afirma que el TPI no erró al desestimar la *Demanda* en su contra por falta de prueba que demostrara la alegada negligencia en que incurrió su asegurado. Reitera que no existe evidencia que pruebe que el señor Ortiz López incurrió en negligencia al manejar su auto y, en consecuencia, haya provocado el accidente. Le asiste la razón.

Después de examinar *de novo* la *Solicitud de Sentencia Sumaria* y la *Oposición a Solicitud de Sentencia Sumaria*, no albergamos duda alguna que el foro apelado actuó conforme a derecho, al resolver el pleito de epígrafe de manera sumaria y desestimar la causa incoada por insuficiencia de la prueba[45].

Aunque el señor Vega Colón alega que el tribunal apelado incidió al imputarle negligencia, a pesar de que existían testimonios contradictorios como argumentó, de las propias declaraciones de las partes involucradas en el accidente, apoyadas por el informe policíaco, se puede inferir la negligencia en que incurrió el señor

---

[45] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 786 (2016); *Meléndez González, et al. v. M. Cuebas*, supra; *Medina Morales v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 732-735 (1994).

Vega Colón y no la alegada negligencia incurrida por el señor Ortiz López.

Como mencionamos anteriormente, para que prospere una acción por responsabilidad civil extracontractual, la parte que reclama debe demostrar que hubo un acto u omisión culposo o negligente, que existe una ***relación causal*** entre ese acto y el daño reclamado y que el perjuicio sea uno real y no hipotético[46].

No hay duda de que el señor Vega Colón tuvo daños como consecuencia del impacto que recibió del vehículo que manejaba el señor Ortiz López, mientras éste cruzaba con su bicicleta la intersección con la PR 165, en Cataño. Sin embargo, también es cierto, según se desprende del informe policiaco y del propio testimonio del señor Vega Colón, que éste no siguió las normas de seguridad para el tránsito de bicicletas que establece la Ley 22-2000, *supra*, al utilizar la vía por el lado contrario al dispuesto en el referido estatuto, transitar por la acera destinada a peatones y no utilizar las protecciones que requiere la legislación[47].

Ciertamente, la versión brindada por el señor Vega Colón en la deposición que se le tomó no encontró apoyo en el informe policiaco que presentó el agente de la Policía Favian A. Rodríguez Méndez, que concluyó que el señor Vega Colón cruzó la intersección de forma negligente, al no seguir las normas que regulan el tránsito de las bicicletas por las vías públicas de Puerto Rico[48].

Al examinar el informe y el diagrama incluido en éste, se puede inferir la dirección en que iba el señor Vega Colón mientras transitaba la Carretera PR-5 y la posición en que se encontraba el vehículo del señor Ortiz López. Claramente, el señor Vega Colón conducía su bicicleta en contra del tránsito vehicular, por el lado

---

[46] *Nieves Díaz v. González Massas*, supra.
[47] Véanse las páginas 24 a la 31 y las páginas 74 y 75 en el Apéndice del Recurso de Apelación.
[48] Véase lo declarado por el señor Vega Colón en las páginas 74 y 75 del Apéndice del Recurso de Apelación.

izquierdo de la carretera, por la acera izquierda y sin las protecciones requeridas en contravención con lo establecido en el Art. 11.03 de la Ley Núm. 22-2000, *supra*[49].

Asimismo, de los testimonios de las partes se puede concluir que el señor Ortiz López se encontraba detenido en la intersección antes de emprender la marcha y que al cruzar la vía impactó el lado izquierdo de la bicicleta con la parte frontal derecha de su vehículo[50]. Esta versión es claramente consistente con el informe de la Policía, que se presume correcto y admisible, como correctamente concluyó el TPI. Regla 805 (H) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 805 (h).

La Regla 805 (H) de las Reglas de Evidencia, *supra*, permite como excepción a la prueba de referencia, la admisión de récords e informes públicos como lo son los que prepara la Policía sobre un accidente o delito. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, 1ra. Ed., San Juan, Ediciones SITUM, 2016, págs. 306-309.

Ciertamente, el Apelante no estableció todos los elementos de acción de daños y perjuicios que incoó contra Mapfre-Praico[51]. Las alegaciones del señor Vega Colón no son suficientes para demostrar la presunta negligencia incurrida por el señor Ortiz López[52]. Por consiguiente, confirmamos la *Sentencia* apelada.

**IV.**

Por los fundamentos que anteceden, se confirma la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 15 de marzo de 2023.

Notifíquese.

---

[49] *Íd.*
[50] Véanse las páginas 126 a la 130 en el Apéndice del Recurso de Apelación.
[51] *SLG Colón-Rivas v. ELA*, supra.
[52] *Rodríguez Méndez v. Laser Eye*, supra; *Medina Morales v. M.S. & D. Química P.R., Inc.*, supra.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Grana Martínez disiente con voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| CARLOS VEGA COLÓN<br><br>Apelante<br><br>v.<br><br>MAPFRE-PRAICO INSURANCE COMPANY<br><br>Apelada | KLAN202300304 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.: BY2022CV01792<br><br>Sobre: DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores.

**VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ**

La solución de una reclamación mediante el mecanismo de sentencia sumaria es recomendable en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no sea necesaria, ya que solo resta por dirimir determinadas controversias de derecho. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 2023 TSPR 80; *SLG Fernández-Bernal v. RAD-MAN et al*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). El hecho material se ha definido como aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, 2023 TSPR 24.

No hay duda alguna que el buen uso de la sentencia sumaria como método adjudicativo permite la solución de pleitos civiles de forma justa, rápida y económica. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, supra; *SLG Fernández-Bernal v. RAD-MAN et al*, supra, pág. 335; *León Torres v. Rivera Lebrón*, supra, pág. 43; *Roldán Flores v. M. Cuebas*,199 DPR 664, 676 (2018). Ahora

bien, su uso no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, supra; *Fernández-Bernal v. RAD-MAN et al*, supra, págs. 335-336; *Rodríguez Méndez v. Laser Eye*, 195 DPR 769 (2016); *Szendrey v. Consejo de Titulares*, 184 DPR 133, 167 (2011).

El Tribunal Supremo de Puerto Rico ha señalado que: "no es aconsejable dictar sentencia sumaria en casos cuyas controversias versan esencialmente sobre asuntos de credibilidad o envuelven aspectos subjetivos, como lo es la intención, los propósitos mentales **o la negligencia**. *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010). Véase, además, *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). No obstante, esto no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que serán considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales. *Aponte Valentin v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 278 (2021); *Nieves Díaz v. González Massas*, 178 DPR 820, 850 (2010); *Ramos Pérez v. Univisión*, supra, pág. 219. (Énfasis nuestro).

Mi disentimiento se basa en que existe controversia de hechos. Algunos de estos materiales o esenciales para la reclamación, tales como la negligencia. La determinación recurrida le concede un desmedido peso probatorio al Informe de Choque de Transito efectuado por el agente Rodríguez, cinco días después del accidente en la solución de la reclamación por la vía sumaria. El Tribunal de Primera Instancia señala y cito:

El informe de la policía corrobora la versión del señor Ortiz. En este, el agente Favián Rodríguez Méndez, señala que el accidente ocurrió cuando el demandante, sin tomar las debidas precauciones y **en contra del tránsito**, esencialmente, cruzó la intersección, siendo impactado por el señor Ortiz, cuando este se disponía a virar.

No obstante, de una detenida lectura del Informe de Choque de Tránsito en lugar alguno se dice que el conductor de la bicicleta, al que se refiere en el informe como vehículo 1 transitaba en contra del tránsito. De hecho, llama la atención que el informe en el encasillado número 246, titulado lugar de ocurrencia, peatón/ciclista no fue completado, tampoco el encasillado número 248, acción del ciclista. Este último totalmente pertinente a la conclusión que el foro recurrido alcanza sin hechos que lo sustenten. De hecho, el informe también omite señalar que el conductor del vehículo 2, parte demandada se encontraba detenido ante una señal de pare en la salida de la 165 en la intersección con la carretera #5. El Informe de Choque de tránsito en la parte narrativa señala lo siguiente:

FECHA: 19 DE MAYO DE 2020 HORA: 9:55AM DE LA INVESTIGACIÓN REALIZADA Y LUEGO DE ENTREVISTAR A LOS CONDUCTORES SE ESTABLECE QUE MIENTRAS EL CONDUCTOR DEL VEHÍCULO DE MOTOR NÚMERO 1 TRANSITABA EN DIRECCION DE SUR A NORTE POR LA ACERA DE LA CARRETERA NÚMERO 5 JURISDICCIÓN DE CATAÑO Y AL LLEGAR A LA INTERSECCIÓN 165 FRENTE AL ESTADIO MUNICIPAL ESPERUCHO CEPEDA. EL CONDUCTOR DEL MISMO CRUZA LA CARRETERA PARA EL OTRO LADO DE LA ACERA INDEBIDAMENTE POR TAL DESCUIDO Y NEGLIGENCIA EL CONDUCTOR DEL VEHÍCULO DE MOTOR NÚMERO 2 EL CUAL TRANSITABA EN LA INTERSECCION 165 EN DIRECCION DE OESTE A ESTE, IMPACTA CON SU PARACHOQUE FRONTAL AL VEHÍCULO NÚMERO UNO POR EL LADO IZQUIERDO. SE CONTINUA CON LA INVESTIGACIÓN.

Considero que la narrativa del Informe es una conclusión sobre la negligencia generalizada, carente de hechos que la sustenten, por lo cual está en controversia. Si bien el Informe se presume correcto, la parte demandante, a mi entender, ha

presentado testimonio, inclusive del propio demandado, que crea una controversia de hechos sobre qué verdaderamente sucedió. La negligencia es un hecho material en la reclamación de epígrafe que a mi entender está controvertida. La doctrina ha enfatizado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versan esencialmente sobre asuntos de negligencia, precisamente el caso ante nuestra consideración.

Sobre la forma en que ocurrió el accidente, vital para determinar negligencia, el demandante sostuvo en su deposición que:

> R.    Pues me dirigí a mi bicicleta, me monté, cogí la PR-5 completa por la acera, pasé frente a Econo, bajé la rampa de Econo, me trepé en la rampa de la 165, me paré, estaban pasando los carros. El caballero en una Rav4 blanca, creo que era una Rav4 blanca, se paró, me dio paso, le dije "gracias". Cuando voy pasando él arrancó la guagua. Como que él estaba texteando, él tenía un teléfono en la mano."[1]
> …
> P.    ¿Y el sol no se reflejaba en el cristal de la Rav4?
> R.    No sabría decirle porque yo voy cruzando la rampa de impedidos. El se para algunos ocho o diez pies antes pa' darme paso.
> …
> P.    ¿Y usted estaba corriendo la bicicleta sobre la acera?
> R. Si. Lo que pasa es que pa' pasar por debajo del puente está la rampa de impedidos, está el área peatonal pa' después treparme en la acera del puente otra vez pa' bajar por debajo del puente.[2]
> …
>
> P.    Entonces nos indica que la persona le dio paso y posteriormente le impacta.
> R.    Sí, cuando voy pasando le di las gracias ye el carro se va, me arrolló.[3]
> …
> P.    ¿Cómo usted sabe que fue el vehículo Rav4 quien le impacta?
> R.    Porque es el único vehículo que está frente a mí.
> P.    ¿En ese momento estaban las luces del semáforo a su favor?
> R.    No, allí no hay luces de semáforo.
> P.    ¿Había alguna otra persona cerca del área?

---

[1] Pág. 74, línea 12 a 19 del apéndice del recurso.
[2] Pág. 74 línea 22 y pág. 75, línea 8 a 12 del apéndice del recurso.
[3] Pág. 75 línea 22 del apéndice del recurso.

R.      La muchacha que se bajó de la guagua se le metió frente a él pa' que él parara porque él dijo que no me vio.[4]

En contradicción a lo expuesto por la parte demandante en su deposición, el demandado sostuvo lo siguiente en cuanto a la forma en que ocurrió el accidente.

P.      Muy bien. Don Edward, yo quiero que usted en sus propias palabras, de su mejor recuerdo, me diga qué fue lo que pasó ese día.

R.      Sí, pues yo tomo la salida, verdad, como usted bien dice, de la 165, y nada, tengo dos carros o tres anterior a mí, verdad, esto es una salida que se ve ampliamente para la derecha, ampliamente hacia el frente, verdad, que está el estadio, ampliamente hacia la izquierda. Yo hago mi, mi espera, verdad, no fue que yo llegué al PARE. Yo hago mi espera. Cuando me toca mi turno de cruzar y hacer la izquierda como bien usted ha dicho, ahí es que de repente llega el señor en la bicicleta y yo lo impacto. Yo no vi ese señor de ningún lado. Eso, uno tiene una amplia vista de la derecha en esa, usted menciona creo que es la Carretera Cinco, uno tiene una amplia vista de esa Carretera Cinco a mano derecha. Eso es como un islote, donde está el PARE es como un islote, verdad, y otro, la, el doblez para hacer una derecha realmente ahí uno lo puede tomar hasta, verdad, de esa parte. Cuando yo llego a mi turno al PARE yo no veo ese caballero, verdad, yo estoy mirando al lado izquierdo. Ya yo había visto derecha, izquierda, voy a cruzar y ahí es que impacto el caballero.[5]

No me queda claro los hechos específicos que ocasionan este accidente, por lo que no puedo suscribir la determinación de negligencia del foro recurrido. Como mínimo está en controversia si el demandado dejó pasar al demandante, lo cual quiere decir que vio al demandante o si simplemente no lo vio en ningún momento. El uso o no de sustancias controladas, alcohol o benzodiazepinas es inmaterial en este momento, en donde tan siquiera puedo distinguir claramente cómo surgieron los eventos que causaron los daños reclamados.

---

[4] Pág. 76, línea 1 a 11 del apéndice del recurso.
[5] Pág. 126, líneas 17 a pág. 127, línea 12 del apéndice del recurso.

Por último, creo que los hechos propuestos en la moción de sentencia sumaria del demandado identificados como, a[6], b,[7] c, a[8], c,[9] d, e, f, g, h, i, r, s, t, u, v, y w, no están en controversia. Los hechos propuestos identificados como b,[10] j, k, l, m, n, o, p, q, están controvertidos. En fin, el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. Si hay dudas sobre la existencia de una controversia de hechos, éstas deben resolverse contra la parte que solicita la sentencia sumaria presentada. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 912 (1994). No albergo duda alguna que existe una controversia de hechos material que impide conceder el remedio sumario a base de alegaciones conclusorias, inferencias y especulaciones no corroboradas, por lo cual revocaría el dictamen recurrido.

En San Juan, Puerto Rico, a 30 de junio de 2023.


Grace M. Grana Martínez
Jueza del Tribunal de Apelaciones

---

[6] Pág. 11 del apéndice.
[7] *Íd.*
[8] Pág. 12 del apéndice
[9] *Íd.*
[10] *Íd.*